IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL LLC. | |
| Plaintiff, | |
| v. | C.A. No. 1:21-cv-00339-RGA |
| ANKER INNOVATIONS LTD. AND FANTASIA TRADING LLC D/B/A ANKERDIRECT, | **JURY TRIAL DEMANDED** |
| Defendants. | |
| FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL LLC, | |
| Plaintiff, | |
| v. | C.A. No. 1:20-CV-00552-RGA |
| TCT MOBILE (US), INC.; TCT MOBILE (US) HOLDINGS, INC.; HUIZHOU TCL MOBILE COMMUNICATION CO. LTD.; and TCL COMMUNICATION, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |
| FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL LLC, | |
| Plaintiff, | |
| v. | C.A. No. 1:20-cv-00551-RGA |
| LENOVO (UNITED STATES) INC.; LENOVO HOLDING COMPANY, INC.; LENOVO GROUP LTD.; and MOTOROLA MOBILITY LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

III.   LEGAL STANDARD ......................................................................................... 6

IV.    ARGUMENT ....................................................................................................... 7

       A.     A Stay Would Simplify, or Altogether Eliminate, Issues for Trial ...................... 7

       B.     A Stay Would Advance Judicial Efficiency and Conserve Limited
              Resources. ............................................................................................. 9

       C.     A Stay Would Neither Prejudice Fundamental nor Confer A Clear Tactical
              Advantage on Defendants. ................................................................... 11

              1.     Fundamental Does not Make or Sell Anything, thus it Would
                     Suffer No Competitive Disadvantage from a Stay. ................. 11

              2.     Defendants' Requests for Post-Grant Reconsideration Were
                     Timely Filed With the PTO. ...................................................... 13

              3.     Defendants Promptly Filed this Motion to Stay. ..................... 14

              4.     The Status of the Post-Grant Proceedings Favors Granting A Stay. ....... 14

       D.     Several Other Considerations Recommend A Stay ................................. 17

              1.     A Stay Would Reduce the Litigation Burdens for Both Parties and
                     the Court ................................................................................. 17

              2.     A Stay Would Preclude Conflicting Results in Parallel Judicial and
                     Administrative Proceedings ..................................................... 18

              3.     A Stay Would Preserve Judicial Resources for Other Members of
                     the Public. ................................................................................ 20

V.     CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AIP Acquisition LLC v. Level 3 Communs., LLC*,
No. 12-617-GMS, 2014 U.S. Dist. LEXIS 200247 (D. Del. Jan. 9, 2014)............................19

*Arkema Inc. v. Honeywell Int'l, Inc.*,
No. 10-cv-2886, 2013 WL 5356844 (E.D. Pa Sept. 25, 2013)................................................13

*In re Bear Creek Techs., Inc.*,
2013 WL 3789471 (D. Del. July 17, 2013) ...........................................................................20

*BodyMedia, Inc. v. Basis Sci., Inc.*,
No. 12-CV-133 GMS, 2013 WL 2462105 (D. Del. June 6, 2013)...........................................9

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
2014 WL 1369721 (D. Del. Apr. 7, 2014)...............................................................11, 12, 15

*Boston Sci. Corp. v. Cordis Corp.*,
777 F. Supp. 2d 783 (D. Del. 2011).........................................................................................7

*British Telecomms. PLC v. IAC/InterActiveCorp*,
No. 18-366-WCB, 2019 WL 4740156 (D. Del. Sept. 27, 2019) ...........................................11

*British Telecomms. PLC v. IAC/InterActiveCorp.*,
No. 18-366-WCB, 2020 WL 5517283 (D. Del. Sep. 11, 2020) ....................................*passim*

*Celorio v. On Demand Books LLC*,
No. 12-821-GMS, 2013 WL 4506411 (D. Del. Aug. 21. 2013)...........................................8, 9

*Digital v. Canon U.S.A.*,
No. 11-326-GMS, 2013 U.S. Dist. LEXIS 205053 (D. Del. Jan. 28, 2013)............................9

*Eberle v. Harris*,
2005 WL 6192865 (D.N.J. Dec. 7, 2005)........................................................................15, 16

*Ethicon LLC v. Intuitive Surgical, Inc.*,
No. CV 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) .......................................10

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988)..................................................................................8, 17, 18

*In re Etter*,
756 F.2d 852 (Fed. Cir. 1985)..................................................................................................7

*Ever Win Int'l Corp. v. Radioshack Corp.*,
    902 F. Supp. 2d 503 (D. Del. 2012)..............................................................................*passim*

*Flexiteek Americas, Inc. v. PlasTEAK, Inc.*,
    No. 08-60996-CIV, 2012 WL 5364263 (S.D. Fla. Sept. 10, 2012)........................................2

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013)......................................................................................2, 19

*Gioello Enters. v. Mattel, Inc.*,
    No. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001)..............................................6, 9

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ..................................7, 12, 18

*Market-Alerts Pty., Ltd. v. Bloomberg Fin. L.P.*,
    922 F. Supp. 2d 486 (D. Del. 2013)....................................................................................9

*MiiCs & Partners America Inc. v. Toshiba Corp.*,
    No. 14-803-RGA, 2015 U.S. Dist. LEXIS 175193 (D. Del. Aug. 11, 2015) ..........................12

*Murata Mach. USA v. Daifuku Co.*,
    830 F.3d 1357 (Fed. Cir. 2016)......................................................................................7, 17

*N Spine, Inc. v. Globus Med., Inc.*,
    Civil No. 10-300, 2011 U.S. Dist. LEXIS 156683 (D. Del. July 14, 2011) ...............13, 15, 17

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
    No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) .........................................9, 14

*P&G v. Kraft Foods Global, Inc.*,
    549 F.3d 842 (Fed. Cir. 2008).............................................................................................6

*Pegasus Dev. Corp. v. Directv, Inc.*,
    2003 WL 21105073 (D. Del. May 14, 2003).........................................................................13

*PIC, Inc. v. Prescon Corp.*,
    485 F. Supp. 1302 (D. Del. 1980)........................................................................................2

*RetailMeNot, Inc. v. Honey Sci. LLC*,
    No. 18-937-CFC-MPT, 2020 WL 373341 (D. Del. Jan. 20, 2020)........................................11

*Round Rock Research LLC v. Dole Food Co.*,
    No. 11-1239-RGA, 2012 WL 1185022 (D. Del. Apr. 6, 2012)..................................6, 8, 9, 18

*Safe Storage LLC v. Dell Inc.*,
    No. 12-1624-GMS, 2016 U.S. Dist. LEXIS 181116 (D. Del. Mar. 11, 2016) .......................12

*Smartflash LLC v. Apple Inc.*,
    621 F.App'x 995 (Fed. Cir. 2015) .......................................................................10

*Speyside Medical, LLC v. Medtronic CoreValve LLC*,
    Dkt. No. 20-cv-00361, D.I. 155 (D. Del. Sept. 30, 2021).......................................2, 8

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*,
    412 F.App'x. 270 (Fed. Cir. 2011) .........................................................................8

*SZ DJI Tech. Co. v. Autel Robotics USA LLC*,
    No. 16-706-LPS .................................................................................................11

*TC Tech. LLC v. Sprint Corp.*,
    No. 16-153-WCB, 2021 WL 4521045 (D. Del. Oct. 4, 2021)...................6, 7, 10, 18

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
    766 F. Supp. 212 (D. Del. 1991).......................................................................17, 20

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
    No. 10-503-SLR, 2010 WL 4823393 (D. Del. Nov. 22, 2010) ...............................11

*VirnetX Inc. v. Apple Inc.*,
    931 F.3d 1363 (Fed. Cir. 2019)...............................................................................2

*In re Vivint, Inc.*,
    14 F.4th 1342 (Fed. Cir. 2021) ...............................................................................5

*Walker Digital, LLC v. Google, Inc.*,
    No. 11-309-SLR, 2013 WL 1489003 (D. Del. Apr. 11, 2013)...............................12

**Statutes**

35 U.S.C. § 303(a) ...........................................................................................5, 16

35 U.S.C. § 305.....................................................................................................15

35 U.S.C. § 316(11)...............................................................................................15

35 U.S.C. § 325(d) ..................................................................................................5

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO STAY PENDING
POST-GRANT PROCEEDINGS**

## I.      INTRODUCTION

Defendants Anker Innovations Ltd., Fantasia Trading LLC d/b/a/ AnkerDirect (collectively "Anker"); TCT Mobile (US), Inc., TCT Mobile (US) Holdings, Inc, Huizhou TCL Mobile Communication Co. Ltd., and TCL Communication, Inc. (collectively "TCL"); Lenovo (United States) Inc. and Lenovo Holding Company Inc. (collectively "Lenovo");[1] and Motorola Mobility LLC ("Motorola") hereby move to stay their respective patent cases against Fundamental Innovation Systems International LLC ("Fundamental") pending post-grant proceedings before the United States Patent and Trademark Office (PTO).  Of the eight patents-in-suit, six are subject to requests for *ex parte* reexamination and a seventh patent is subject to an *inter partes* review (IPR) proceeding that has already been instituted.[2]

Staying the litigations would be beneficial to the Court, the parties, and the public.  Not only would it lower *all* parties' litigation costs and burdens in three related cases, but it would also preserve this Court's limited resources.  The PTO is currently reconsidering the validity of all 80 claims asserted against Anker and TCL (and nearly all the claims asserted against Lenovo and

---

[1] Fundamental has not served a Summons and Complaint on Defendant Lenovo Group Ltd. ("LGL"), and LGL has not waived service of the same.  Consequently, this filing is not being made on behalf of LGL.

[2] *Inter partes* review of U.S. Patent No. 7,834,586 instituted on August 27, 2021.  *Ex parte* reexaminations of U.S. Patent Nos. 8,169,187 and 6,936,936 commenced on November 18, 2021 and November 24, 2021, respectively. *Ex parte* reexamination requests for U.S. Patent Nos. 7,239,111; 8,624,550; 7,453,223; and 8,232,766 are pending before the PTO, and PTO actions on those requests are expected shortly.

Motorola).[3]  These post-grant proceedings will almost certainly simplify the issues for trial, and indeed, may dispose of one or more cases entirely.  *See Speyside Medical, LLC v. Medtronic CoreValve LLC*, Dkt. No. 20-cv-00361, D.I. 155 (D. Del. Sept. 30, 2021) (granting stay in which three of the five asserted patents were in instituted IPRs and IPRs on the remaining two asserted patents had been denied because "[i]n the end, although the [denied IPR] patent[s] will not be at issue in the IPRs, and a trial would certainly be needed as to those patents at some point, the Court concludes that there are enough potential simplification gains to warrant staying the case as to these patents as well.").  The PTO grants over 90% of requests for reexamination, and nearly 80% of challenged claims are canceled or changed.  *See* Johnson Decl., Ex. 1 (U.S. Patent and Trademark Office Reexamination Statistics).  And even "if the PTO concludes that the patent is still valid, all concerned will gain the benefit of the expertise the PTO will bring to bear on its analysis." *PIC, Inc. v. Prescon Corp.*, 485 F. Supp. 1302, 1311, n.25 (D. Del. 1980) (internal quotation marks omitted).

A stay would also prevent the potentially deleterious effects of parallel proceedings, such as the PTO upending a jury determination by cancelling the asserted claims before this Court enters a final judgment or—even worse—cancelling the asserted claims ***after*** a jury determination and appeal by either side to the Federal Circuit, which could void the jury's verdict and damages award. *See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1347 (Fed. Cir. 2013); *VirnetX Inc. v. Apple Inc.,* 931 F.3d 1363, 1369 (Fed. Cir. 2019) (PTO must terminate a reexamination only after a *final* decision on validity in federal court, which would not exist until the time to file a certiorari petition has passed); *Flexiteek Americas, Inc. v. PlasTEAK, Inc.,* No. 08-60996-CIV,

---

[3] Five claims of U.S. Patent No. 7,986,127 (which is in the same patent family as the other seven asserted patents) asserted against only Lenovo and Motorola are not subject to post-grant proceedings.

2012 WL 5364263 (S.D. Fla. Sept. 10, 2012) (vacating a judgment based on the PTO cancelling claims during reexamination after judgment was entered).

A temporary stay would not prejudice Fundamental or unduly advantage Defendants. Fact discovery is ongoing, opening expert reports are months away, the *Markman* hearing has not yet occurred in any of the three cases, and trial is scheduled for either late-October 2022 (Lenovo/Motorola/TCL) or late-October 2023 (Anker). Clearly, this is not a case in which the defendants have strategically delayed their requests for post-grant proceedings to gain an unfair advantage. In fact, Anker filed its requests for reexamination only a month after receiving notice of the asserted claims. And TCL filed its petition for IPR roughly four months after Fundamental first identified its asserted claims. To the extent Fundamental would experience any inconvenience from a stay, it would be too short-lived to be substantial. Fundamental is a non-practicing entity that does not make or sell any products whatsoever, and all but one patent-in-suit expires in March 2022. Accordingly, Fundamental would not suffer any harm from a stay that cannot be readily addressed with monetary damages.

## II.     BACKGROUND

There are three related cases currently pending before this Court in which Fundamental asserts overlapping patents. Fundamental sued TCL and Lenovo on April 23, 2020 for alleged patent infringement involving six overlapping patents.[4]   *See Fundamental Innovation Sys. Int'l LLC v. TCT Mobile (US),* Dkt. No. 20-552-CFC-CJB, ECF 1, Complaint For Patent Infringement

---

[4] Fundamental asserted six patents against TCL: U.S. Patent Nos. 7,239,111 (the "'111 Patent"), 8,624,550 ("the '550 Patent"), 7,834,586 ("the '586 Patent"), 8,232,766 ("the '766 Patent"), 8,169,187 ("the '187 Patent"), and 6,936,936 ("the '936 Patent"). Fundamental asserted five of those patents, in addition to U.S. Patent Nos. 7,986,127 ("the '127 Patent") and 7,453,233 ("the '233 Patent"), against Lenovo and Motorola.

and Jury Demand (D. Del. Apr. 23, 2020); *Fundamental Innovation Sys. Int'l LLC v. Lenovo Group Ltd.,* Dkt. No. 20-551-CFC-CJB, ECF 1, Complaint For Patent Infringement and Jury Demand (D. Del. Apr. 23, 2020). Fundamental amended its complaint against Lenovo on June 2, 2020 to add Motorola as a defendant and its complaint against TCL on September 11, 2020. *See Fundamental Innovation Sys. Int'l LLC v. TCT Mobile (US),* Dkt. No. 20-552-CFC-CJB, ECF 15, Amended Complaint For Patent Infringement and Jury Demand (D. Del. Sep. 11, 2020); *Fundamental Innovation Sys. Int'l LLC v. Lenovo Group Ltd.,* Dkt. No. 20-551-CFC-CJB, ECF 9, Amended Complaint For Patent Infringement and Jury Demand (D. Del. June 2, 2020).

TCL filed petitions for IPR of the asserted claims in December 2020, January 2021, and February 2021. *See Fundamental Innovation Sys. Int'l LLC v. TCT Mobile (US),* Dkt. No. 20-552-CFC-CJB, ECF 71, (D. Del. Sep. 16, 2021) (Ltr informing the Judge Connolly of petitions for IPR). On March 5, 2021, Fundamental sued Anker for alleged infringement of four of the same patents.[5] *See Fundamental Innovation Sys. Int'l LLC v. Anker Innovations Ltd.,* Dkt. No. 21-339-CFC, ECF 1, Complaint For Patent Infringement and Jury Demand (D. Del. Mar. 5, 2020). The PTO issued its institution decisions on IPR in July and August of 2021.[6] On September 16, 2021, the Court rescheduled the *Markman* hearing in the cases involving TCL, Lenovo, and Motorola to be held jointly with the related case involving Anker on February 22, 2022. *See Fundamental Innovation Sys. Int'l LLC v. TCT Mobile (US),* Dkt. No. 20-552-CFC-CJB, Court Order Rescheduling Hearings, (D. Del. Sep. 16, 2021) (Oral Order).

---

[5] Fundamental asserted four patents against Anker: The '111 Patent, '550 Patent, '936 Patent, and '233 Patent.

[6] The Patent Trial and Appeal Board (PTAB) instituted *inter partes* review of the '586 Patent and denied the remaining petitions. *See* Johnson Decl., Ex. 5.

Anker filed four requests for *ex parte* reexamination in November 2021, addressing each of the four patents asserted against it, and two more requests for *ex parte* reexamination were filed in October 2021 directed to the '766 and '187 patents. *See* Johnson Decl. ¶ 8. The requests each present the PTO with new prior art and fresh invalidity grounds that the PTO has not considered previously. *Id.* ¶ 9. Thus far, the PTO has determined that the requests for reexamination of the '187 Patent, the '936 Patent, and the '111 Patent present substantial new questions of patentability, and it commenced *ex parte* reexamination on November 18, 2021, November 24, 2021, and January 4, 2022, respectively. *See* Johnson Decl., Exs. 2, 3, and 4; *In re Vivint, Inc.*, 14 F.4th 1342, 1346, (Fed. Cir. 2021) ("By statute, the Patent Office must find a 'substantial new question of patentability' before ordering reexamination, 35 U.S.C. § 303(a), and it may deny reexamination when 'the same or substantially the same prior art or arguments previously were presented to the Office,' 35 U.S.C. § 325(d).").

The remaining three requests are still pending before the PTO, but as shown in the table below, the remaining reexamination requests are based on the same prior art, in the same patent family as the patents subject to the already granted reexaminations, and directed to similar claims as the reexaminations already granted on the '187 Patent, the '936 Patent, and the '111 Patent:

| Challenged Patent | Reexamination Prior Art | Status of Request |
|---|---|---|
| 6,936,936 | China Patent No. CN2410806Y ("Yang"), USP 6,904,488 ("Matsumoto"), USP 6,531,845 ("Kerai"), USP 5,799,196 ("Flannery") | Granted |
| 7,239,111 | Yang, Matsumoto, Kerai, Flannery | Granted |
| 7,453,233 | Yang, Matsumoto, Kerai | Pending |
| | | |
| 8,169,187 | Yang, Matsumoto, USP 7,766,698 ("De Iuliis"), Japan Patent Application Publication No. 2000-165513A ("Morita"), USP 7,360,004 ("Dougherty"), and USP 6,625,738 ("Shiga") | Granted |
| 8,232,766 | Yang, Matsumoto, De Iuliis, Morita, Dougherty, Shiga | Pending |
| 8,624,550 | Yang, Matsumoto, De Iuliis, Morita, Dougherty, Shiga, Kim | Pending |

With four of the asserted patents already involved in post-grant proceedings, and three more likely to be ordered in the coming weeks, Defendants now file this motion to stay their respective litigations until the PTO concludes its proceedings and issues its final determinations.

## III.    LEGAL STANDARD

District courts have inherent power to stay judicial proceedings pending reexamination of a patent. *See P&G v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008).  Congress intended for district courts to liberally grant such stays. *See TC Tech. LLC v. Sprint Corp.*, No. 16-153-WCB, 2021 WL 4521045 (D. Del. Oct. 4, 2021).  Courts in this District have identified numerous advantages that flow from stays pending the outcome of PTO reexamination: "(1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court." *Gioello Enters. v. Mattel, Inc.*, No. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001); *see Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 506 (D. Del. 2012).

The standard for granting a stay pending *ex parte* reexamination is: "(1) whether granting the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage". *Round Rock Research LLC v. Dole Food Co.*, No. 11-1239-RGA, 2012 WL 1185022, *1 (D. Del. Apr. 6, 2012).  "The court examines several factors in

determining whether the imposition of a stay will result in prejudice upon BSC, including the timing of the request for reexamination, the timing of the request for stay, the status of the reexamination proceedings and the relationship of the parties." *Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011).  District courts have the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016).  For example, courts in this district have also considered whether a stay would reduce the burden of litigation on the parties and the court. *See TC Tech*, 2021 WL 4521045, at *6-7 (D. Del. Oct. 4, 2021).

## IV.   ARGUMENT

### A.   A Stay Would Simplify, or Altogether Eliminate, Issues for Trial

Whether a post-grant proceeding is likely to simplify the issues at trial is "[t]he most important factor bearing on whether to grant a stay." *TC Tech. LLC* 2021 WL 4521045, at *4. Congress created the *inter partes* review process "in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation." *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, *8 (D. Del. Aug. 21, 2019).  Similarly, when a patent is concurrently involved in litigation, one function of *ex parte* reexamination is to "free the court from any need to consider prior art without the benefit of the PTO's initial consideration." *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985).

"When a patent claim is reexamined by the PTO, there are three possible outcomes." *Ever Win*, 902 F. Supp. 2d at 505.  The claim "can be cancelled as unpatentable, it can be confirmed as originally written, or it can be modified." *Id.* at 505-506.  And "the standard for reexamination is sufficiently exacting that the great majority of *ex parte* reexaminations end in the cancellation or

amendment of at least some of the reexamined claims." *British Telecomms. PLC v. IAC/InterActiveCorp.*, No. 18-366-WCB, 2020 WL 5517283, *10 (D. Del. Sep. 11, 2020). Indeed, approximately 80% of challenged claims are either cancelled or changed. *See* Johnson Decl., Ex. 1 (Ex Parte Reexamination Filing Data - September 30, 2020). Because the PTO is considering the validity of all 80 claims asserted against TCL and Anker (and all but 5 of the claims asserted against Lenovo and Motorola), "the law of probabilities makes it almost certain that some of the claims will be rejected or modified." *Round Rock*, 2012 WL 1185022, *1 ("As a general matter, with so many claims in play, the law of probabilities makes it almost certain that some of the claims will be rejected or modified, and others of them."); *Speyside Medical, LLC*, D.I. 155 ("In the end, although the [denied IPR] patent[s] will not be at issue in the IPRs, and a trial would certainly be needed as to those patents at some point, the Court concludes that there are enough potential simplification gains to warrant staying the case as to these patents as well.").

Whatever the outcome, "there is the potential for the simplification of issues for trial." *Win Int'l*, 902 F. Supp. 2d at 505-506. "[E]ven if the reexamination[s] [do] not lead to claim amendment or cancellation, [they] could still provide valuable analysis to the district court, . . . which it could consider in reaching its determination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988); *British Telcoms.*, 2020 WL 5517283, at *9 ("And even if the patentability of [the asserted claims] is confirmed through reexamination, the reexamination decision will likely clarify some of the invalidity issues presented in this litigation."). For example, the reexaminations "will garner additional prosecution history that may be relevant to claim construction." *Round Rock*, 2012 WL 1185022, at *1. And "the court would likely benefit from the expert analysis the PTO conducts, thus further simplifying issues before the court." *Celorio v. On Demand Books LLC*, No. 12-821-GMS, 2013 WL 4506411, n.1 (D. Del. Aug. 21. 2013); *St. Clair Intellectual*

*Prop. Consultants, Inc. v. Canon Inc.*, 412 F.App'x. 270, 276 (Fed. Cir. 2011) ("The reexamination procedure serves an important role in providing a district court with an expert view of the PTO.").[7]

More still, as noted above, *supra* III, courts in this District have identified at least seven other ways in which a stay pending reexamination could simplify the issues in a patent case. *Digital v. Canon U.S.A.*, No. 11-326-GMS, 2013 U.S. Dist. LEXIS 205053, *4 (D. Del. Jan. 28, 2013) (quoting *Gioello*, 2001 WL 125340, at *1).  This factor weighs heavily in favor of granting a stay.

### B.      A Stay Would Advance Judicial Efficiency and Conserve Limited Resources.

"Motions to stay pending reexamination are typically granted in the early stages of patent litigation," *Ever Win*, 902 F. Supp. 2d at 507, because they "advance judicial efficiency and maximize[s] the likelihood that neither the Court nor the parties expend their assets addressing invalid claims," *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) (internal quotation marks omitted).  Although the related cases here coexist at different early stages of litigation, the court should coordinate all three cases and stay them collectively "in the interests of judicial and litigant economy."  *See Market-Alerts Pty., Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 496-97 (D. Del. 2013).

The case involving Anker is in its infancy.  Fundamental served its infringement contentions less than three months ago, fact discovery is just starting and will continue through next year (i.e., fact discovery closes on November 18, 2022), expert discovery will not end until

---

[7] A stay is appropriate here, where notwithstanding the lack of a first Office Action from the PTO. *See, e.g., British Telecomms.*, 2020 WL 5517283, at *2; *BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-CV-133 GMS, 2013 WL 2462105, at *1, n.1 (D. Del. June 6, 2013); *Ever Win*, 902 F. Supp. 2d at 504–05; *Celorio v. On Demand Books LLC*, 2013 WL 4506411.  Unsurprisingly, examiners typically issue rejections after finding that a "substantial new question of patentability" exists. *Round Rock*, 2012 WL 1185022, at *1 ("The Court's understanding is that finding invalidity is the usual result of a 'First Office Action.'").

late-March 2023, and trial is scheduled for nearly two years from now (i.e., trial date is October 23, 2023).  *See Fundamental v. Anker,* Dkt. No. 21-339-CFC, ECF 17, Proposed Scheduling Order (D. Del. Sep. 28. 2021.  Although the cases against Defendants TCL, Lenovo, and Motorola are further along, the Court has not yet conducted the *Markman* hearing,[8] fact discovery is open, expert discovery will not commence for months, and trial is scheduled for late-October 2022. *See Fundamental v. TCT Mobile,* Dkt. No. 20-551-CFC, ECF 23, Amended Scheduling Order (D. Del. Sep. 16, 2020.  Here, in particular, where the Court may not have yet had the opportunity to invest time, effort, and resources into the cases due to the recent reassignment, staying the litigation now would allow the Court to better allocate its limited resources to cases where simplification is not possible and a stay is not ripe, as it is here.  "[T]he most burdensome parts of the case[s] for the parties and the court all lie in the future."  *See British Telecomms.*, 2020 WL 5517283, at *6 (recognizing that "the most burdensome parts of the case for the parties and the court—preparation for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future"); *see also Smartflash LLC v. Apple Inc.*, 621 F.App'x 995, 1005 (Fed. Cir. 2015) ("Despite the substantial time and effort already spent in this case, the most burdensome task is yet to come").

Importantly, it is not unusual for courts in this District to stay cases that are more advanced than the TCL and Lenovo/Motorola cases.  *See, e.g.*, *Ethicon LLC v. Intuitive Surgical, Inc.*, No. CV 17-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019) (granting stay where fact discovery was complete, a claim construction order had issued, expert discovery was nearly complete, and trial was seven months away); *TC Tech.*, 2021 WL 4521045, at *7 (staying case in which claim construction and fact discovery were complete, a trial date had been set and two

---

[8] Judge Connolly *sua sponte* rescheduled the *Markman* hearing for TCL, Lenovo, and Motorola for a consolidated hearing with Anker after Fundamental filed that case in March 2021, approximately 1 year after filing suit against TCL, Lenovo, and Motorola in April 2020.

months remained before trial); *British Telcoms.*, 2020 WL 5517283, at *2 (staying case during expert discovery, after fact discovery and claim construction had been completed, and just three months before trial).   "[D]enying a stay because of the progress of the case to this point would impose significant expenses on the parties that might be avoided if the stay results in the simplification (or obviation) of further court proceedings."   *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366-WCB, 2019 WL 4740156, *4 (D. Del. Sept. 27, 2019).

### C.   A Stay Would Neither Prejudice Fundamental nor Confer A Clear Tactical Advantage on Defendants.

To assess whether prejudice is undue, courts consider (1) the relationship between the parties, (2) the timing of the post-grant request; (3) the timing of the stay request, and (4) the status of the post-grant proceedings.   *See Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010).   Each of these factors favor staying the judicial proceedings until all post-grant proceedings conclude.

### 1.   Fundamental Does not Make or Sell Anything, thus it Would Suffer No Competitive Disadvantage from a Stay.

"[W]hen the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."   *RetailMeNot, Inc. v. Honey Sci. LLC*, No. 18-937-CFC-MPT, 2020 WL 373341, *8 (D. Del. Jan. 20, 2020).   But Plaintiff Fundamental is a nonpracticing entity that does not compete with the defendants.   Accordingly, there is "no impediment to a stay."   *Bonutti,* 2014 WL 1369721 at *4.

Staying judicial proceedings on patents that Fundamental does not even practice would not impose harm.   *See SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. 16-706-LPS, WL 1244948

(D. Del. Mar. 18, 2019).   As judges in this District have explained, non-practicing entities, like

Fundamental, "face[] no risk of a competitive disadvantage or eroded market share." *Safe Storage*

*LLC v. Dell Inc.*, No. 12-1624-GMS, 2016 U.S. Dist. LEXIS 181116, *7 (D. Del. Mar. 11, 2016).

They "do not participate in the relevant market and will not suffer any loss of market share or

erosion of goodwill due to a stay." *IOENGINE*, 2019 WL 3943058 at *6.   And "there is little risk

that it will lose sales or goodwill in the market." *Bonutti*, 2014 WL 1369721, at *5.   Furthermore,

to the extent Fundamental would experience any prejudice at all from a stay (which it would not),

it "can be remedied by monetary damages." *Walker Digital, LLC v. Google, Inc.*, No. 11-309-

SLR, 2013 WL 1489003, *3 (D. Del. Apr. 11, 2013).   "[D]espite requests for injunctive relief [in

its Complaints]," Fundamental is "realistically looking only for monetary damages." *MiiCs &*

*Partners America Inc. v. Toshiba Corp.*, No. 14-803-RGA, 2015 U.S. Dist. LEXIS 175193, *4-5

(D. Del. Aug. 11, 2015).

   Critically, all but one asserted patent expires in March 2022;[9] thus, in a matter of 3 months,

Fundamental's ability to license the asserted patents for future use will terminate.   And with every

asserted patent expired, damages would no longer accrue.   In fact, if trial occurred after the last

asserted patent expires June 8, 2023, the damages analysis would be simplified as the jury would

not need to calculate a running royalty.   Moreover, upon expiration, Fundamental would lack any

legal basis to enjoin anyone from practicing its expired patents.   Besides, Fundamental "never

[even] sought a preliminary injunction, which suggests that any prejudice . . . that might result

from delaying the ultimate resolution of this dispute is not as severe as [Fundamental might]

contend[]." *Ever Win*, 902 F. Supp. 2d at 511.   Thus, when the patent expiration dates are fast

---

[9] The '936 patent expires June 8, 2023.  *See* Johnson Dec. ¶ 10.

approaching as they are here, staying the litigations would lead to further simplification rather than prejudice. The relationship of the parties clearly favors a stay.

### 2. Defendants' Requests for Post-Grant Reconsideration Were Timely Filed With the PTO.

TCL petitioned for IPR only four months after being served with Fundamental's original complaint, and Anker filed four requests for *ex parte* reexamination (on four different patents) within eight months of Fundamental's original complaint. *N Spine, Inc. v. Globus Med., Inc.*, Civil No. 10-300 (RMB/AMD), 2011 U.S. Dist. LEXIS 156683, *9 (D. Del. July 14, 2011) ("Given that Defendant's request for reexamination was made only eight months after Plaintiffs initiated suit . . . , the Court finds that Defendant is not seeking a stay pending reexamination for the purpose of gaining a tactical advantage . . . ."); *Ever Win*, 902 F. Supp. 2d at 508-509 ("[A] defendant need not make its request for reexamination (and its follow-on request for a stay) immediately after it was served with the Complaint or after it filed its Answer.").[10]

Defendants TCL and Anker worked swiftly and efficiently to prepare and file their post-grant requests in a matter of months. Successful *ex parte* reexamination requests and IPR petitions require extensive preparation. For example, the preparation process generally entails analyzing the challenged patents, searching for and assessing prior art, interviewing experts, researching case law, drafting the petition or request, and more. Each of these steps can be complicated and time consuming. *See Pegasus Dev. Corp. v. Directv, Inc.*, 2003 WL 21105073 (D. Del. May 14, 2003) ("It is presumed that [a request for reexamination] requires an enormous expenditure of time and

---

[10] Because non-parties to the litigations requested *ex parte* reexamination of the '187 Patent and the '766 patent, the timing of those requests is immaterial to the undue prejudice inquiry. *See, e.g., Arkema Inc. v. Honeywell Int'l, Inc.*, No. 10-cv-2886, 2013 WL 5356844, *3 (E.D. Pa Sept. 25, 2013) ("Because neither party to this litigation requested the reexamination, the timing of the request for reexamination is immaterial.").

other resources; thus, the timing of [Defendant's] reexamination requests does not, necessarily, reflect undue delay."). Further, because Anker's reexamination requests advanced new invalidity grounds that were not proposed in any previous IPR petition, additional time was required to evaluate the prior art that previous IPR petitioners had relied on and then develop prior art grounds that the PTO had never considered.

### 3.    Defendants Promptly Filed this Motion to Stay.

Defendants promptly filed this motion to stay as soon as it became probable that a stay would simplify the issues and result in efficiencies for the parties and the Court. "[T]he less time that a party waits to file a motion to stay pending reexamination, the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical." *Ever Win*, 902 F. Supp. 2d at 508; *see Neste Oil*, 2013 WL 3353984, at *2. Defendants have been diligent. The PTAB instituted *inter partes* review of the '586 Patent four months ago, and the PTO granted the requests for *ex parte* reexamination of the '936 Patent and the '187 Patent in November 2021 and of the '111 Patent in January 2022. *See* Johnson Decl., Exs. 2, 3 and 4 (PTO Decisions Granting Reexamination); Johnson Decl., Ex. 5 (PTAB Decision Granting Institution). Further, because the PTO is statistically likely to grant the remaining three requests for reexamination, Defendants move now to stay the judicial proceedings to preserve resources, minimize burdens, and prevent prejudice. This conduct cannot be characterized as dilatory.

### 4.    The Status of the Post-Grant Proceedings Favors Granting A Stay.

The PTO has granted three requests for *ex parte* reexamination and one petition for *inter partes* review of the asserted patents. Three additional requests for *ex parte* reexamination remain pending, and as discussed below, the outstanding requests are likely to be granted as they are based on the same prior art references as the two requests already granted.

Fundamental would not experience any undue prejudice from a stay.  *See N Spine*, 2011 U.S. Dist. LEXIS 156683, *10 ("[T]he delay inherent to the reexamination process does not constitute, by itself, undue prejudice."); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, 2014 WL 1369721, at *2 (D. Del. Apr. 7, 2014) ("Potential delay does not in itself establish undue prejudice to the non-movant, however.").  Indeed, the stay would be short-lived.  The IPR petition for the '586 Patent was granted on August 27, 2021, and the *ex parte* reexaminations of the '187, '936, and '111 patents were ordered on November 18, 2021, November 24, 2021, and January 4, 2022, respectively.  *See* Johnson Decl., Exs. 2, 3 and 4.  By statute, IPR proceedings must generally conclude within 12 months.  *See* 35 U.S.C. § 316(11).  Thus, the IPR proceedings on the '586 Patent will likely conclude by August 2022.  Further, recent PTO statistics indicate that the average pendency for *ex parte* reexamination proceedings is 26 months, *see* Johnson Decl., Ex. 1, therefore, reexamination of the '187 and '766 patents should conclude by late 2023, and reexamination of the '111 Patent should conclude by early 2024.  In fact, they could conclude even sooner if Fundamental forgoes its patent owner's statement.  *See Manual of Patent Examining Procedure* § 2249.  Moreover, the PTO must conduct reexaminations with "special dispatch."  *See* 35 U.S.C. § 305.  In other words, "[a]ny cases involved in litigation . . . will have priority over all other cases."  *See Manual of Patent Examining Procedure* § 2261.

Likewise, that three reexamination requests remain pending before the PTO does not counter the benefits of a stay.  With one IPR petition instituted, three *ex parte* reexaminations ordered, and three requests for reexaminations pending (on patents in the same patent family as the patents subject to the granted reexaminations) based on the same prior art as the two requests for reexamination already granted, "the debate is not whether or not this civil action will be affected, but rather the extent of said affect."  *Eberle v. Harris*, 2005 WL 6192865, *3 (D.N.J.

Dec. 7, 2005).  "The benefits of waiting for the PTO's reexamination(s) far outweigh the burden of waiting for their decision(s)."  *Id.*  Moreover, the wait is almost over because the PTO must decide "within three months" of the requests (filed in November 2021), whether to order *ex parte* reexamination.  *See* 35 USCS § 303(a) ("Within three months following the filing of a request for reexamination . . . , the Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request.").

| Challenged Patent | Reexamination Prior Art | Status of Request |
|---|---|---|
| 6,936,936 | China Patent No. CN2410806Y ("Yang"), USP 6,904,488 ("Matsumoto"), USP 6,531,845 ("Kerai"), USP 5,799,196 ("Flannery") | Granted |
| 7,239,111 | Yang, Matsumoto, Kerai, Flannery | Granted |
| 7,453,233 | Yang, Matsumoto, Kerai | Pending |
| | | |
| 8,169,187 | Yang, Matsumoto, USP 7,766,698 ("De Iuliis"), Japan Patent Application Publication No. 2000-165513A ("Morita"), USP 7,360,004 ("Dougherty"), and USP 6,625,738 ("Shiga") | Granted |
| 8,232,766 | Yang, Matsumoto, De Iuliis, Morita, Dougherty, Shiga | Pending |
| 8,624,550 | Yang, Matsumoto, De Iuliis, Morita, Dougherty, Shiga, Kim | Pending |

Finally, as revealed in the PTO's published statistics, the three pending requests have a more than 90% chance of being granted.  *See* Johnson Decl., Ex. 1.  And that outcome is even more likely to occur because the three pending requests rely on prior art grounds that largely overlap with the grounds advanced in the three reexamination requests that the PTO has already granted.  Specifically, the grounds asserted in the requests for reexamination of U.S. Patent No. 7,453,233 are encompassed by the grounds asserted in the already-granted requests on the '936 Patent and '111 Patent.  Likewise, the grounds asserted in the requests for reexamination of U.S. Patent Nos. 8,232,766 and 8,624,550 are encompassed by the grounds asserted in the already-granted request on the '187 Patent.

### D.      Several Other Considerations Recommend A Stay

"Attendant to the district court's inherent power to stay proceedings is the court's discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata*, 830 F.3d at 1362.  "The burden litigation places on the court and the parties . . . is one such consideration that district courts may rightfully choose to weigh." *Id.*  Another consideration is "the prospect of [] a conflict between a district court judgment and the PTO's ruling." *British Telcoms.*, 2020 WL 5517283, at *8.  And some courts consider the preservation of public resources.  See *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) ("[I]t would waste already scarce public resources to go over ground already covered in the reexamination.").  Each of these additional considerations support Defendant request for a stay pending resolution of the post-grant proceedings.

#### 1.      *A Stay Would Reduce the Litigation Burdens for Both Parties and the Court.*

"Congress specifically instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the PTO." *See N Spine*, 2011 U.S. Dist. LEXIS 156683, at *10 (internal quotation marks and alterations omitted).  Staying these judicial proceedings pending reexamination would give the PTO "an opportunity to reconsider patents that have become the focus of litigation, relieving [this court] of the need to decide some patent validity issues, and saving the court[] from adjudicating infringement claims based on patents of questionable validity." *British Telcoms.*, 2020 WL 5517283, at *4.  Thus, the court should grant Defendants' motion at least because the "reexamination 'will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation.'" *Ethicon*, 849 F.2d at 1426 (citing H. Rep. 1307 (I), 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Admin. News 6460, 6463).

The stay would also reduce the financial burden that the parties would indisputably face with continued litigation. Without question, "the costs of patent litigation are great, and the PTO's actions could significantly alter the landscape that will drive the costs of these [] lawsuits." *Round Rock*, 2012 WL 1185022, at *1. For example, discovery and other expenses—such as claim construction, expert reports, pre-trial motions, and trial—might be significantly reduced if the universe of claims at issue was narrowed. That is particularly true here because, as discussed above, *supra* IV.B, "the most burdensome parts of the case[s] for the parties and the court— preparation for trial, going through the trial process, and engaging in post-trial motions practice— all lie in the future." *TC Tech.*, 2021 WL 4521045, at *7. Thus, granting Defendants' motion to stay the litigations until the post-grant proceedings conclude would result in substantial economies of time, effort and expense for the parties and the Court.

### 2.      *A Stay Would Preclude Conflicting Results in Parallel Judicial and Administrative Proceedings.*

This Court has the authority to stay this litigation pending the conclusion of PTO reexamination, but the PTO cannot stay reexamination proceedings once they are ordered. *Ethicon*, 849 F.2d at 1426-27 (explaining that, once ordered, the PTO must conduct reexamination with special dispatch); *British Telcoms.*, 2020 WL 5517283, at *8 ("[E]ven if a stay were not granted, the PTO would continue with the reexamination process . . . ."). Thus, the court alone can spare the litigants from the prospect of needless and duplicative parallel proceedings.

"All that would be affected by granting a stay is the sequencing of the proceedings and the possible avoidance of duplication of effort by the PTAB and the district court." *IOENGINE*, 2019 2019 WL 3943058, at *7. And "[t]he only effects of denying a stay would be (1) that the proceedings before the PTO and before the court would proceed concurrently, with the waste of resources entailed in such duplicative proceedings, and (2) that if the district court proceedings

resulted in a final court judgment in [Plaintiff's] favor before the PTO reexamination proceeding became final, and the reexamination resulted in the cancellation of [the asserted claim], the [district court's] final judgment as to the validity of [the asserted] would not be affected by the PTO's determination, at least with respect to the parties in this case." *British Telcoms*., 2020 WL 5517283 at *8; *AIP Acquisition LLC v. Level 3 Communs., LLC*, No. 12-617-GMS, 2014 U.S. Dist. LEXIS 200247, *7 (D. Del. Jan. 9, 2014) ("[I]f the court proceeded through to trial, a jury verdict finding the [asserted] patent valid might be vacated if a later IPR final decision invalidated the [asserted] patent."). The court should decline to proceed in parallel with the PTO at least because "the prospect of such a conflict between a district court judgment and the PTO's ruling would be unseemly and should be avoided if possible." *British Telcoms*., 2020 WL 5517283 at *8. *Fresenius* is a case-in-point. 721 F.3d. 1330.

In *Fresenius*, a patent litigation was permitted to proceed in parallel with a PTO reexamination of the patent-in-suit. In the district court, the asserted claims were found infringed and not invalid. *See Fresenius*, 721 F.3d. at 1332. The Federal Circuit affirmed that determination but remanded to the district court to reconsider damages. *See id.* While the litigation was pending before the district court on remand, the PTO completed its reexamination and invalidated all asserted claims. The Federal Circuit affirmed the PTO's determination, also. To resolve the conflicting judicial and administrative determinations, the Federal Circuit ruled that the PTO's intervening decision invalidating the asserted claims mooted the pending litigation. *Fresenius*, 721 F.3d. at 1340 ("When a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot."). Thus, the PTO's decision nullified two judicial proceedings—a district court trial and a Federal Circuit

appeal—which could have been avoided by simply staying the litigation until the reexamination proceeding concluded.

### 3.   *A Stay Would Preserve Judicial Resources for Other Members of the Public.*

Rather than "waste already scarce public resources to go over ground already covered in the reexamination," *United Sweetener*, 766 F. Supp. at 217, the public would be best served if the Court would exercise its "inherent power to conserve [its] judicial resources" to address the community's immediate needs, *In re Bear Creek Techs., Inc.*, 2013 WL 3789471, *3 (D. Del. July 17, 2013). Granting Defendants' motion to stay would enable the Court to manage its busy docket to efficiently allocate its limited resources among members of the public, and then resolve the parties' dispute after the PTO makes its post-grant determinations and simplifies the issues for trial.

## V.   CONCLUSION

For the foregoing reasons, this is a classic case for staying litigation pending resolution of post-grant administrative proceedings. The Court should grant Defendants' motion to stay.

Dated:  January 5, 2022

*Of Counsel:*

Robert J. Benson
ORRICK, HERRINGTON
      & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA  92614-8255
(949) 567-6700
rbenson@orrick.com

Jeffrey Johnson
ORRICK, HERRINGTON
      & SUTCLIFFE LLP
609 Main Street, 40th Floor
Houston, TX 77002-3106
(713) 658-6400
jj@orrick.com

Yufeng (Ethan) Ma
ORRICK HERRINGTON
      & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai 200040
People's Republic of China
+86 21 6109 7000
ema@orrick.com

ASHBY & GEDDES

  */s/ Andrew C. Mayo*
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants Anker Innovations Ltd. and Fantasia Trading LLC d/b/a Ankerdirect*

*Of Counsel:*

Robert J. Benson
ORRICK, HERRINGTON
      & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA  92614-8255
(949) 567-6700
rbenson@orrick.com

Jeffrey Johnson
ORRICK, HERRINGTON
      & SUTCLIFFE LLP
609 Main Street, 40th Floor
Houston, TX 77002-3106
(713) 658-6400
jj@orrick.com

ASHBY & GEDDES

  */s/ Andrew C. Mayo*
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants TCT Mobile (US), Inc.; TCT Mobile (US) Holdings, Inc.; Huizhou TCL Mobile Communication Co. Ltd.; and TCL Communication, Inc.*

{01758855;v1 }

21

*Of Counsel:*

Sean C. Cunningham (pro hac vice)
Erin P. Gibson (pro hac vice)
Peter Maggiore (pro hac vice)
DLA PIPER LLP (US)
401 B. Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700
sean.cunningham@us.dlapiper.com
erin.gibson@us.dlapiper.com
peter.maggiore@us.dlapiper.com


Jake Zolotorev (pro hac vice)
Erik R. Fuehrer (pro hac vice)
Sangwon Sung (pro hac vice)
Monica De Lazzari (pro hac vice)
DLA PIPER LLP (US)
2000 University Avenue East
Palo Alto, CA 94303-2214
(650) 833-2000
jake.zolotorev@us.dlapiper.com
erik.fuehrer@us.dlapiper.com
sangwon.sung@us.dlapiper.com
monica.delazzari@us.dlapiper.com

DLA PIPER LLP (US)

/s/ *Brian A. Biggs*
Brian A. Biggs (#5591)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
(302) 468-5700

*Attorneys for Defendants Lenovo (United States) Inc., Lenovo Holding Company Inc., and Motorola Mobility LLC*