IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL LLC., <br><br> Plaintiff, <br><br> v. <br><br> ANKER INNOVATIONS LTD. AND FANTASIA TRADING LLC D/B/A ANKERDIRECT, <br><br> Defendants. | Civil Action No. 21-339-RGA |

### MEMORANDUM ORDER

Before me is Plaintiff's Motion to Exclude Certain Testimony by Defendants' Experts. (D.I. 124). Specifically, Plaintiff moves to exclude Mr. Bakewell's reasonable royalty calculation based on the "Standstill Agreement" and a license given by Fundamental to RPX. (D.I. 125 at 32-38). I have considered the parties' briefing. (D.I. 125, D.I. 139, D.I. 144). I heard oral argument on February 23, 2024. For the reasons set forth below, this motion is GRANTED.

**1. Mr. Bakewell's Reasonable Royalty Calculation**

Mr. Bakewell calculated his reasonable royalty using two of Fundamental's prior licenses.

The first prior license is the "Limited Release and Standstill Agreement." (D.I. 126 Ex. 21). The parties refer to this as the Standstill Agreement. It was signed in January 2019. Its relevant terms, stated generally, are: (1) Fundamental released any patent claims for certain of its patents against certain of Anker's products through to March 31, 2019; (2) the parties agreed to institute no litigation (including patent infringement, declaratory judgments, and IPR petitions)

1

against each other (hence, the "standstill") through December 31, 2020; and (3) Anker would pay Fundamental $150,000. (*Id.*; D.I. 126 Ex. 19 ¶ 115). An additional term (the significance of which is disputed) is that Anker had the option to take a license at 50 cents per product. (D.I. 126 Ex. 21; D.I. 126 Ex. 19 ¶ 118).

Mr. Bakewell treats the Standstill Agreement as though it represented the exchange of $150,000 for the licensing[1] of Anker's products sold from January 1, 2016 through March 2019. Mr. Bakewell adjusts the $150,000 to account for the hypothetical license's different length. (D.I. 126 Ex. 19 ¶¶ 122-123). Mr. Bakewell makes no other adjustments. The resulting lump sum royalty for the damages period in this case is $190,000. (*Id.* at ¶123). Mr. Bakewell calculates that the per-unit royalty is $0.01/unit. (*Id.* at ¶124).

The second prior license is the Fundamental/RPX "Fourth Amendment," dated December 18, 2020, which is an amendment to the Fundamental/RPX "Patent License and License Option Agreement," dated October 2, 2019. (D.I 126 Exs. 22-23, D.I. 126 Ex. 19 ¶ 132). Under the 2019 agreement, RPX paid Fundamental an eight-figure lump-sum in exchange for "a license to all of Fundamental's U.S. and worldwide patents and patent applications." (*Id.*). RPX might be described as a middleman. Part of its business is obtaining patent rights so that it can earn income by sublicensing those patents to its clients. The 2019 agreement included a provision that RPX had the option to sublicense the patents to more than 180 enumerated "Option Companies" during the applicable Option period if RPX paid Fundamental an additional fee. (*Id.*). The Fourth Amendment was entered into after the Option period had passed; it allowed RPX to sublicense to

---

[1] Mr. Bakewell states that the "release" is the economic equivalent of a "license." (D.I. 126 Ex. 19 ¶ 117).

2

Belkin and Secondco[2] in exchange for $2.2 million. (D.I. 126 Ex. 19 ¶¶ 134-35). I refer to the agreements through which Belkin was licensed as the "RPX license."

Mr. Bakewell treats the RPX license as though it were an agreement by Belkin and Secondco to take a license directly from Fundamental in exchange for $2.2 million.[3] Mr. Bakewell adjusts the $2.2 million lump sum and calculates the portion he attributes to Belkin rather than to Secondco. (*Id.* at ¶ 151). Mr. Bakewell estimates that Belkin accounts for three-quarters of the transaction, and he reduces the $2.2 million accordingly. (*Id.* at ¶¶ 148-151). Mr. Bakewell thus concludes Belkin would have paid $1.65 million for the license. (*Id.* at ¶157). Mr. Bakewell also adjusts the $1.65 million for the different length of the hypothetical license. (*Id.* at ¶¶ 154-157, 180). These adjustments result in a lump sum range of $915,000 to $2.8 million, depending on the start date used. (*Id.* at ¶157). Mr. Bakewell opines that this amount is overstated relative to the hypothetical license because it includes rights to all of Fundamental's U.S. and worldwide patents and patent applications. (*Id.*).

2. **The Parties' Positions**

Plaintiff argues that the Standstill Agreement is an economically non-comparable license and so Mr. Bakewell's reasonable royalty calculation based on this license should be excluded. (D.I. 125 at 32). Plaintiff presents a number of reasons why the Standstill Agreement is non-comparable and, even if it isn't, why it should still be excluded. First, Plaintiff argues the Standstill Agreement was a complex agreement that mostly dealt with the potential for litigation

---

[2] The identity of the second company is irrelevant, so I give it this pseudonym.

[3] Plaintiff's expert addresses the RPX license in his opening expert report. There he explains why RPX's involvement means the RPX license is not economically comparable. (D.I. 129 Ex. 1 ¶¶ 32-34). Mr. Bakewell criticizes Plaintiff's expert's analysis, but for the most part he does not justify his own use of the RPX license. He does, however, state that it is a useful indicator of what Fundamental was willing to accept for a license to the patents. (D.I. 126 Ex. 19 ¶ 160).

and did not license any of Plaintiff's intellectual property. (*Id.*). Second, Plaintiff argues Plaintiff had much bigger fish to fry, did not wish to be in litigation with Anker, and Anker said it could not pay more than $150,000.[4] (*Id.* at 33-34). Plaintiff argues the Standstill Agreement should be excluded under Rule 403, because explaining Plaintiff's licensing strategy, litigation campaigns, declaratory judgments, and IPRs would be a difficult-to-understand sideshow for a jury. (*Id.* at 33, 34-35).

Defendants argue that the Standstill Agreement is comparable because it involves the exact same parties and the same patents-in-suit. (D.I. 139 at 35). Defendants contend the Standstill Agreement is the most comparable of any of the various Fundamental agreements because it reflects what Fundamental agreed to accept from Anker in 2019 for the patents-in-suit. (*Id.*). Defendants also argue that excluding Mr. Bakewell's analysis would have the improper effect of preventing Mr. Bakewell from rebutting Mr. Weinstein's reasonable royalty analysis, and that the factual dispute as to whether the Standstill Agreement is a comparable license would be best addressed through cross examination at trial. (*Id.* at 35-36).

Plaintiff argues that the RPX license is not a comparable license and thus Mr. Bakewell's reasonable royalty calculation based on this license should be excluded. (D.I. 125 at 35). Plaintiff offers three reasons in support.[5] (*Id.* at 35-38). First, Plaintiff argues that Defendants did not disclose the RPX license in its response to Plaintiff's Interrogatory No. 14 that asked Anker to

---

[4] Plaintiff says it was concerned that Anker would file a declaratory judgment or seek an IPR, although I wonder how Plaintiff thought Anker was going to be able to do that if, as Plaintiff says, it accepted that Anker only had a maximum of $150,000 to take care of its problems.

[5] Plaintiff's brief has a paragraph suggesting that Plaintiff is arguing technological incomparability because the RPX license includes a license to more patents than just the patents-in-suit, as well as worldwide rights. (D.I. 125 at 36). Plaintiff does not pursue that argument, presumably because its expert's analysis is being challenged by Defendants at least partly on the same basis.

identify any potentially relevant license agreements. (*Id.* at 35). Second, Plaintiff contends Mr. Bakewell does not account for the economic differences between Anker and RPX. (*Id.* at 37). Specifically, Plaintiff argues that RPX provides a market to Fundamental by which Fundamental can access licensees it otherwise would not be able to reach. (*Id.*, citing D.I. 126 Ex. 18 at 260:22-25). Plaintiff contends Mr. Bakewell does not account for the value of the sublicense market that RPX brings. (*Id.*). Third, Plaintiff argues that the Belkin sublicense operated as a settlement agreement due to litigation that was pending between Fundamental and Belkin,[6] which makes the Belkin license not comparable to a hypothetical license. (*Id.* at 37-38). Plaintiff cites *LaserDynamics* for the proposition, "The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).

Defendants argue the RPX license is comparable because it involves the same patents-in-suit, licenses one of Anker's key competitors for the accused products (Belkin) and has comparable timing to the hypothetical license. (D.I. 139 at 36). Defendants contend that Fundamental itself disclosed that this license would be comparable in its response to Anker's

---

[6] *Fundamental Innovation Systems International LLC v. Belkin Inc.*, No. 20-550-CFC-CJB (D. Del. filed April 23, 2020).

Interrogatory No. 21.[7] (*Id.*). Defendants also argue that at a minimum there is a factual dispute as to whether the RPX license is a comparable license. (*Id.* at 36).[8]

Defendants address Plaintiff's argument that Mr. Bakewell's opinion on the RPX license should be excluded because Defendants did not disclose it in response to Fundamental's interrogatory. Defendants contend Fundamental waived that argument by not including it in its motion to strike. (D.I. 123). Defendants also argue that the interrogatory prematurely sought disclosure of expert reports and testimony and that Fundamental itself identified the RPX license as comparable during fact discovery. (D.I. 139 at 37-38). I agree with Defendants that Plaintiff forfeited the disclosure challenge when it did not include it in its motion to strike. I am also unconvinced that there has been any prejudice to Plaintiff from the lack of disclosure in response to the interrogatory. I therefore will not exclude the RPX license on this ground.

### 3. I exclude both the Standstill Agreement and the RPX License

The parties essentially argue the same issue for both agreements: Have Defendants demonstrated "that it is more likely than not that" the opinion based on the agreements will meet the four requirements of Federal Rule of Evidence 702. In particular, given Federal Circuit precedent on the use of "comparable" licenses, have Defendants shown Mr. Bakewell's opinions are the "product of reliable principles and methods" reliably applied "to the facts of this case."

---

[7] Interrogatory No. 21 states: "If You contend that any third-party with whom you have entered into any patent license, cross-license, and/or settlement agreement is comparable to Anker, Identify any such third-party and the corresponding patent license, cross-license, and/or settlement agreement by Bates Number." (D.I. 141 Ex. L at 22). In its response, Fundamental states: "Agreements involving a license to the Patents-in-Suit that *may* be relevant include the following…" (*Id.* at 23 (emphasis added)). I do not think Fundamental's Interrogatory response committed it to the position that the RPX license is comparable. I therefore reject this argument in deciding whether the RPX license is comparable.

[8] Defendants' cited cases do not stand for the proposition that the Court's gatekeeping role should be delegated to the jury.

6

Fed. R. Evid. 702. The "reliable principles and methods" here are essentially the legal requirements for an agreement to be a technologically and economically comparable patent license to the hypothetical patent license that the parties would have negotiated at the end of 2015. I resolve this issue now and exclude the Standstill Agreement, the RPX license, and Mr. Bakewell's opinions based on these agreements.

A comparable license must have both technological and economic comparability to the hypothetical license. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010)) (stating "use of past patent licenses under [*Georgia-Pacific*] factors 1 and 2 must account for differences in the technologies and economic circumstances of the contracting parties."); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010) (holding the district court erred by not considering the "technological and economic differences" between the licenses and the patent at issue). "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics,* 694 F.3d at 79. "The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded." *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 675–76 (D. Del. 2016) (citing *DataQuill Ltd. v. High Tech Comput. Corp.*, 887 F.Supp.2d 999, 1022 (S.D. Cal. 2011)).

### a. Standstill Agreement

I find the Standstill Agreement is not economically comparable to the hypothetical license. It is not a patent license agreement. It is not the settlement of patent litigation. It is not the settlement of threatened patent litigation. It is what it appears to be, an agreement to pause potential litigation for nearly two years that included a release for past patent infringement damages and a payment of $150,000. Although at the time of the Standstill Agreement the

patents had not expired, there was no agreement as to any forward-looking royalty.[9] Mr. Bakewell has not shown that it is more likely than not the $150,000 represents a quid pro quo for the release. I further expect that, if each side thought that one cent per unit was a reasonable royalty, they would have reached a comprehensive agreement to that effect rather than postponing litigation for nearly two years so that they could deal with it at a later time. Mr. Bakewell has not shown that the Standstill Agreement is a comparable agreement, and I therefore exclude it.

The Standstill Agreement is more like a settlement agreement than a license for the patents-in-suit, but it has even less probative value than an actual settlement agreement. Federal Circuit precedent "has noted the 'longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages.'" *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, 2021 WL 982732, at *10 (D. Del. Mar. 16, 2021). "There is minimal probative value in using litigation settlement agreements to calculate a reasonable royalty, as the settlement agreement is not comparable to a negotiation between two willing parties." *Id.* Mr. Bakewell did not adjust the $150,000 to account for the different economic circumstances surrounding the Standstill Agreement. The only adjustment Mr. Bakewell made was for the different length of the hypothetical license (D.I. 126 Ex. 19 ¶¶ 122-123), which is insufficient.

Defendants' argument that the Standstill Agreement is comparable because it involves the same parties and patents-in-suit is not enough. I am also not persuaded that I should allow

---

[9] There was an option that Anker could have a license for 50 cents per unit, but there is no evidence that was something that Anker bargained for or has ever shown any interest in accepting. (*Cf.* D.I. 126 Ex. 19 ¶ 131 (noting that the 50 cents per unit option might be for Fundamental's future licensing efforts)). Indeed, the Standstill Agreement states that the parties "agree to negotiate in good faith a patent license agreement to memorialize such license option" (D.I. 126 Ex. 21 § 2.4), but no one has suggested either side took any steps to do this.

this opinion simply because Mr. Bakewell needs it to be able to respond to Mr. Weinstein's opinion. Mr. Bakewell's testimony, rebuttal or otherwise, must be based in sound methods. "Federal Circuit precedent requires that for a license to be used in a damages analysis, the license must be proven comparable to the hypothetical negotiation." *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016) (citing *Lucent Techs.*, 580 F.3d at 1325). I will exclude Mr. Bakewell's reasonable royalty calculations based on the Standstill Agreement.

### b. RPX License

The RPX license is not economically comparable to the hypothetical license. Mr. Bakewell uses the $2.2 million lump sum RPX paid Fundamental as the basis for the assumption that had RPX and Belkin negotiated directly, Belkin would have paid the same $2.2 million to Fundamental.[10] (D.I. 126 Ex. 19 ¶¶ 136, 146). This is a leap in logic that Mr. Bakewell does not support.

The parties to the RPX license are not comparable to the parties to the hypothetical license, Fundamental and Anker. True, Fundamental is a party to both agreements. But the counterparties are very different. RPX, unlike Anker and Belkin, is not a company that sells charging adapters and power banks. Instead, it is a company that makes money (in part) by obtaining patent licenses that are or might become involved in litigation,[11] as RPX has done in

---

[10] Mr. Bakewell's assumption that the entire $2.2 million that RPX paid was on behalf of Belkin and not on behalf of Secondco is a clearly-stated assumption. There is no challenge to that. He alternatively calculates a reasonable royalty on the basis of an analysis that concludes that Belkin represents 75% of the value of the $2.2 million payment. This analysis is based on the ratio of Belkin's sales to Secondco's sales. (D.I. 126 Ex. 19 ¶¶147-157). After some adjustments based on the different length of the RPX license, Mr. Bakewell calculates the reasonable royalty for the hypothetical license should be $915,000 to $2.8 million. (*Id.* at ¶157).

[11] "RPX reduces patent risk in the most direct way possible: we remove patents – pre-litigation and out of active litigation – before they can become a costly problem for our clients. We have spent over $4 billion to date to defensively acquire rights to more than 200,000 patent assets from the market. And it's working. . . . RPX has changed the way companies fight patent

relation to Fundamental's patents. It is not a comparable party to either Belkin or Anker. Mr. Bakewell makes no attempt to account for this fact. If RPX paid $2.2 million for the patent license, what did Belkin pay RPX for the sub-license? That's an unknown. It should further be self-evident that Belkin did not actually pay RPX $2.2 million for the sublicense, as otherwise RPX would quickly go out of business. Thus, Mr. Bakewell's reliance on the RPX license is not a reliable indicator of what Belkin would have paid Fundamental if the two of them had directly negotiated a license. Since the leap that RPX and Belkin are interchangeable is unreliable, further analysis dependent upon that leap is also unreliable.

Because the licenses are not economically comparable, I do not need to reach the issue of technological comparability.

I exclude Mr. Bakewell's reasonable royalty calculations based on the RPX license.

IT IS SO ORDERED.

Entered this 17th day of May, 2024

United States District Judge

---

assertions. Instead of wasting billions of dollars on fruitless legal confrontations, we apply capital to acquire patents rights and *prevent* those litigations from happening. The result: far fewer patents available for assertion campaigns; far less litigation; and far less cost and risk for members of the RPX network." https://www.rpxcorp.com/solutions/rpx-network/ (last visited May 2, 2024). I do not rely upon RPX's description of itself, but the description is consistent with what I say in the body of this order.